**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------- x
FIRST CENTRAL SAVINGS BANK,                                    :
                                                  :
                  Plaintiff,                                    :
                  :         **MEMORANDUM AND ORDER**
         -against-                                    :           09-CV-3444 (DLI) (LB)
                                                 :
MERIDIAN RESIDENTIAL CAPITAL d/b/a/            :
TRUMP FINANCIAL, DAVID BRECHER,                :
MERIDIAN MORTGAGE SERVICES, INC.,             :
DBS SERVICING SOLUTIONS, INC., NH              :
APPRAISAL ASSOCIATES, INC., DAVID S.          :
FRANKEL, P.C., MDS APPRAISAL GROUP,           :
LAW OFFICES OF SAM SHORE, JEFFREY            :
E. MEHL, ESQ., TRUE VALUATIONS                    :
APPRAISERS, ADMOR APPRAISALS,                    :
ATRIUM APPRAISAL SERVICES, INC.,               :
THE ADDISON GROUP, OLD REPUBLIC               :
NATIONAL TITLE INSURANCE CO.,                    :
ANDREW KESLER, and MAK APPRAISALS,     :
                                                  :
                 Defendants.                                    :
                                                  :
--------------------------------------------------------- X

**DORA L. IRIZARRY, United States District Judge:**

On August 7, 2009, plaintiff First Central Savings Bank ("First Central") filed this civil

RICO action against defendants Meridian Residentail Capital, LLC s/h/a "Meridian Residential

Capital d/b/a Trump Financial" ("Meridian"), David Brecher, Meridian Services, Inc. s/h/a

"Meridian Mortgage Services, Inc." ("MSI"), DBS Servicing Solutions, Inc. ("DBS")

(collectively, Meridian, Brecher, MSI and DBS are the "Meridian Defendants"), NH Appraisal

Associates, Inc. ("NH Appraisal"), MDS Appraisal Group ("MDS"), Atrium Appraisal Services,

Inc. ("Atrium Appraisal"), True Valuations Appraisers ("True Valuations"), Admor Appraisals

("Admor"), the Addison Group, Andrew Kesler, MAK Appraisals ("MAK") (collectively, MDS,

Atrium Appraisal, True Valuations, Admor Appraisals, the Addison Group, Kesler, and MAK

are the "Appraisal Defendants"), Old Republic National Title Insurance Co. ("Old Republic"), David S. Frankel, P.C. ("Frankel"), Law Offices of Sam Shore ("Shore"), and Jeffrey E. Mehl, Esq. (collectively, Old Republic, Frankel, Shore and Mehl are the "Attorney Defendants").

The Meridian Defendants, Frankel, MDS, Shore, Mehl, Admor, move to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. NH Appraisal, True Valuations, Kesler, and MAK move to dismiss the complaint pursuant to Rule 12(c). For the reasons set forth below, the motions to dismiss are granted. However, in light of the fact that Plaintiff is granted leave to replead, the dismissal of the complaint is held in abeyance.

## BACKGROUND

Plaintiff is a New York State chartered savings bank which was chartered in 1999. The Meridian Defendants are in the business of brokering and servicing mortgage loans. Plaintiff alleges that it entered into a Loan Origination and Marketing Agreement with the Meridian Defendants that sets forth procedures for the parties to follow when originating and closing certain loans. Plaintiff further alleges that, between 2003 and 2008, the Meridian Defendants originated over 225 mortgage loans that are now on First Central's books, and that approximately 40 of the 75 are in foreclosure, including 6 that have been sold after a judgment of foreclosure and 2 that are awaiting sale.

The complaint alleges that the Meridian Defendants submitted fraudulent information to First Central for the purpose of inducing Plaintiff to fund the loans. Plaintiff alleges that it was injured in three ways. First, Plaintiff alleges that the Meridian Defendants and Appraisal Defendants submitted fraudulently overstated appraisals which induced Plaintiff to issue or purchase loans that it otherwise would not have issued or purchased. (Compl. ¶¶ 52-55.) Second, Plaintiff alleges that the Meridian Defendants submitted loan applications that

misrepresented borrowers' incomes, and that the Meridian Defendants and Attorney Defendants permitted mortgages to close with funding by Plaintiff despite the fact that the defendants had knowledge of facts that adversely affected Plaintiff's interests with respect to the loans. (Compl. ¶¶ 47-51, 58-62.) Third, Plaintiff alleges that the Meridian Defendants and the Attorney Defendants engaged in a separate scheme to close the mortgage loans with documentation containing terms that were materially different from those agreed to by First Central. (Compl. ¶¶ 56-57.) The loans had commitment letters issued by Plaintiff, and the letters contained adjustable interest rates with interest rate floors. Plaintiff argues that, upon information and belief, the Meridian Defendants and Attorney Defendants intentionally closed the loans without interest rate floors.

Plaintiff asserts a RICO claim pursuant to 18 U.S.C. § 1962(c) and a RICO conspiracy claim pursuant to 18 U.S.C. § 1962(d) against all defendants. Plaintiff also asserts various state law claims, including fraud, conspiracy to defraud, breach of fiduciary duty, and negligent misrepresentation.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The pleading standard under Rule 8 does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007), "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009). A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (*quoting Twombly*, 550 U.S. at 557). A plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of a cause of action's

elements will not do. *Twombly*, 550 U.S. at 555. On a Rule 12(b)(6) motion, the court must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the nonmoving party. *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002). The court may only consider the pleading itself, documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and matters of which judicial notice may be taken. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir. 1995). "The same standard applicable to Fed. R. Civ. P. 12(b)(6) motions to dismiss applies to Fed. R. Civ. P. 12(c) motions for judgment on the pleadings." *Bank of New York v. First Millennium, Inc*., 607 F.3d 905, 922 (2d Cir. 2010).

## DISCUSSION

The defendants make several arguments each in support of their motions to dismiss. In particular, the Meridian Defendants, Shore, Frankel, and Mehl argue that the complaint fails to allege a RICO injury. Shore, Frankel, Mehl, NH, Kesler, MAK, MDS, and Admore argue that the complaint fails to allege that they participated in the enterprise. Shore also argues that plaintiff has failed to allege fraud with particularity. MDS also argues that the court does not have personal jurisdiction over MDS pursuant to New York State law, and that venue is improper in the Eastern District of New York.

## I.     RICO STANDING

The Meridian Defendants, Shore, Frankel, and Mehl argue that First Central has failed to allege a RICO injury. Civil RICO allows "[a]ny person injured in his business or property by reason of a violation of Section 1962" to sue for treble damages and attorneys' fees. 18 U.S.C. §

1964(c). "From this language, courts have extracted the conditions a plaintiff must meet to satisfy RICO's standing requirements: '(1) a violation of Section 1962; (2) injury to business or property; and (3) causation of the injury by the violation.'" *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 767 (2d Cir.1994) (quoting *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23 (2d Cir. 1990)). The Meridian Defendants, Shore, Frankel, and Mehl argue that Plaintiff has failed to properly allege injury and causation as to all three of the theories Plaintiff puts forth regarding its alleged injury.

### A.  ALLEGATIONS REGARDING INFLATED APPRAISALS

Plaintiff's first basis for injury is that that the Meridian Defendants and Appraisal Defendants prepared and submitted numerous fraudulent appraisals containing property values substantially above their actual values at the time the appraisals were prepared. Defendants argue that Plaintiff has not adequately alleged injury because not all of the loans have been foreclosed and thus the claims are not ripe as to all of the loans. Defendants further argue that Plaintiff has also failed to allege proximate cause because it has not provided facts to show that the loss was caused by the alleged overstated appraisals.

### 1.  RIPENESS OF THE INJURY

"[A]s a general rule, a cause of action does not accrue under RICO until the amount of damages becomes clear and definite." *First Nationwide*, 27 F.3d at 768. For claims involving foreclosures of property, the losses a plaintiff would suffer as to loans that have not been "finally foreclosed" cannot yet be determined. *Id.* at 769. Therefore, plaintiff lacks standing with regard to the loans that have not been finally foreclosed.

Plaintiff, relying on *First Nationwide*, argues that the term "finally foreclosed" means that the property need not be sold to determine damages. Plaintiff therefore contends that it has

suffered clear and definite losses with respect to eight loans, including two loans that have been foreclosed but have not resulted in a sale of the collateral.

However, the court in *First Nationwide* did not address the distinction between loans that were merely foreclosed but not sold and those that resulted in a sale. Nevertheless, *First Nationwide*'s description of the determination of damages demonstrates that the actual loss becomes clear and definite only when the property is sold. The court in *First Nationwide* stated that "the amount of loss cannot be established until it is finally determined whether the collateral is insufficient to make the plaintiff whole, and if so, by how much." *First Nationwide*, 27 F.3d at 768. Only after "the lender has exhausted the bargained-for remedies available to it can the lender assert that it was damaged by the fraud, and then only to the extent of the deficiency." *Id.* Whether the collateral is insufficient to make the plaintiff whole, and the amount by which it falls short, can only be determined after a sale.

Therefore, plaintiff has standing only as to the six loans that have undergone foreclosure and resulted in a sale. The specific loans in question were made to borrowers Jones, who had two loans, Abeckaser, Baker, Rubenstein, and Green. Any claims involving loans that have not resulted in a sale are dismissed.

## 2. PROXIMATE CAUSE

For the loans that have resulted in a sale, in addition to showing that the loans were finally foreclosed, plaintiff must show that the alleged racketeering was both the proximate and "but-for" cause of its injuries. *See First Nationwide*, 27 F.3d at 769. Therefore, plaintiff must allege that "there was a direct relationship between the plaintiff's injury and the defendant's injurious conduct. This requires a showing not only that the defendant's alleged RICO violation

was the but-for or cause-in-fact of his injury, but also that the violation was the legal or proximate cause." *Id.* (internal quotation marks and citations omitted).

In evaluating the proximate cause requirement with regard to a fraudulently induced loan, courts consider a number of factors such as "the magnitude of the misrepresentations, the amount of time between the loan transaction and the loss, and the certainty with which the loss can be attributed to defendant's conduct." *First Nationwide*, 27 F.3d at 770.

a.     <u>**MAGNITUDE OF MISREPRESENTATIONS**</u>

In its complaint, plaintiff relies on subsequent appraisals and the sale prices obtained after the loans defaulted to demonstrate the alleged magnitude of the inflated appraisals. Defendants, relying on *First Nationwide*, argue that the subsequent appraisals are not a reliable indicator of the alleged misrepresentations. In *First Nationwide*, the plaintiff alleged that the defendants, a commercial mortgage broker and several borrowers, operating as a RICO enterprise, fraudulently induced the bank to make loans to the borrower defendants by misrepresenting the value of collateral. Plaintiff tried to show the magnitude of the alleged overstatements by reconstructing what they alleged was the true value of the properties at the time the loans were made. The court held that the appraisals suffered from several deficiencies, including the fact that appraisals involve a substantial amount of guesswork, the information relied on was inaccurate, the complexity of the New York multi-apartment real estate market, and the failure to account for the contribution of external market factors to the loss. Defendant argues that the appraisals here suffer from similar deficiencies.

Plaintiff contends that, in contrast to *First Nationwide*, the subsequent appraisals here are a reliable indicator of the magnitude of the overstatements because the appraisals utilized the same methodologies as the initial appraisals, and were conducted within a reasonable time after

the initial appraisals. Plaintiff fails to acknowledge, however, that the court in *First Nationwide* also noted that one of the factors that affected the subsequent appraisals was the general decline in the real estate market during which other collateral properties lost some of their value. *First Nationwide*, 27 F.3d at 771. Although the appraisals here may not suffer from all of the other infirmities that the court noted in *First Nationwide*, the collapse of the real estate market is a substantial factor. The allegedly overstated appraisals on the six relevant loans occurred in 2004 to 2006, which is well before the real estate market collapse. However, all of the sale prices and appraisals plaintiff relies on to demonstrate the alleged actual value of the properties were from 2008 or later.

Plaintiff does not dispute that the real estate market collapse occurred after the loans were made and before the subsequent appraisals, and merely states in a conclusory fashion that the decline did not cause First Central's losses. Such conclusory statements are insufficient to demonstrate that it was the alleged fraud and not the market that caused the decline. Plaintiff provides no basis to show that the value of other similarly situated properties did not decline by the same amount as the properties here. Moreover, plaintiff's similarly conclusory assertion that the allegedly overstated appraisals and the subsequent appraisals utilized the same methodologies is unsupported by any factual allegations.

Plaintiff further argues that defendants continued to make payments on defaulted loans, and thus concealed the fraud from plaintiff. Plaintiff contends that, because of the concealment, the second appraisals were not completed sooner. However, the alleged concealment does not reduce plaintiff's burden to properly provide a factual basis to support proof of proximate cause. *See, e.g.*, *Leung v. Law*, 387 F. Supp. 2d 105, 122 (E.D.N.Y. 2005) ("[A] predicate act cannot be deemed to have proximately caused a plaintiff's injury, even if it was an integral part of the

underlying criminal scheme, unless the plaintiff's original loss could not have occurred without the commission of the predicate act.").

In sum, plaintiff has failed to provide sufficient information to support its conclusions regarding the magnitude of the alleged misrepresentations.

   b. **TEMPORAL CONNECTION AND INTERVENING FACTORS**

"The second and third factors . . . dealing with the time lapse between the alleged fraud and the plaintiff's injury and the presence of external factors, are related." *First Nationwide*, 27 F.3d at 772. Plaintiff argues that the fraud occurred when the appraisals were overstated, and the injury occurred when the borrowers defaulted. Plaintiff claims that the majority of the loans defaulted almost immediately, and that there was therefore only a short time lapse between the alleged misrepresentations and plaintiff's losses. However, defendants contend that the time of the loss is when the collateral property is finally sold and the amount of loss can be determined. The time of the loss is material here because many of the properties were not sold until several years after the loans went into default.

Although it appears that in *First Nationwide* the time between the default and the sale was not as substantial as it is here, thus making the distinction irrelevant for the purposes of the court's analysis, the court's statements demonstrate that it was likely referring to the time of default. *See First Nationwide*, 27 F.3d at 772 (noting that, despite the plaintiff's allegation that "the net operating income for most of the collateral properties was insufficient to service the principal and interest payments due on the loans, *few of the properties went into default until mid-1990*, when the real estate market collapsed" (emphasis added)). However, in *First Nationwide*, the loss stemmed from supposed misrepresentations about the borrowers' ability to pay, which would be supported by a short time between the loan and the default. Here, the

alleged loss stems from supposedly misleading property valuations, which, if true, would not necessarily cause a borrower to default quickly.

Therefore, the relevant time period here is the time between the misrepresentation and the point at which it can be determined that the property value decreased, which is the time of the subsequent appraisal or sale. The subsequent appraisals and sales did not occur until after the real estate market collapse, thus providing additional support for the possibility that the real estate market collapse, and not the fraud, was the cause of the Plaintiff's injury.

Moreover, even if the court were to consider the time between the loan closings and the defaults, the factual allegations in the complaint do not support plaintiff's position. The time between when the loans were closed and when they defaulted ranges from 2 months to 21 months. For the loan that defaulted after only two months, which is by far the shortest time, the mortgage loans were closed in April 2006 in the principal amounts of $280,000 and $56,250, a total of $336,250. Upon information and belief, both loans defaulted in June 2006. In March 2008, the property was sold for $320,000. These facts, in light of the collapse of the real estate market, fail to demonstrate that the alleged elevated appraisal was the cause of the injury.

In sum, in order to show that the decline in the value of the properties was due to defendants' overstated appraisals and not to the general decline of the real estate market, plaintiff must provide evidence of the value of similar properties and the effect of the real estate market on their value. For example, if plaintiff puts forth several properties that had a value in 2004-2006 that were similar to the properties at issue here, and provides evidence that the values of those properties did not decline at the same rate as the properties here, that could be evidence that the cause of the decline here was overstated appraisals. In light of the lack of proximate cause, the claims regarding overstated appraisals must be dismissed.

### B. ALLEGATIONS REGARDING MISREPRESENTATIONS OF BORROWERS' INCOMES

Plaintiff's second theory of loss is that the Meridian Defendants submitted loan applications that misrepresented borrowers' incomes and other factors affecting creditworthiness, and that the Meridian Defendants and Attorney Defendants permitted mortgages to close with funding by Plaintiff despite the fact that the defendants had knowledge of facts that adversely affected Plaintiff's interests with respect to the loans. The Meridian Defendants counter that Plaintiff has not adequately alleged injury or proximate cause. None of loans that were allegedly induced by misrepresentations or omissions on the loan applications were finally foreclosed. (*See* Compl. ¶¶ 72-109.) Therefore, Plaintiff has not been injured by these alleged misrepresentations and the misrepresentations could not have been the proximate cause of the injury suffered from the foreclosed loans. Any claims that the Meridian Defendants or Attorney Defendants concealed or misstated facts on loan applications are therefore dismissed.

### C. ALLEGATIONS REGARDING INTEREST RATE FLOOR

Plaintiff's third theory of loss is that the Meridian Defendants and Attorney Defendants closed loans with documentation containing terms that were materially different from those agreed to by plaintiff. The Meridian Defendants, Shore, Frankel, and Mehl assert that plaintiff has failed to adequately allege that they caused clear and definite injury with regard to Plaintiff's claims concerning the interest rate floors.

Plaintiff maintains that it issued commitment letters containing adjustable interest rates with interest rate floors. Plaintiff alleges that, upon information and belief, the Meridian Defendants, Shore, Frankel, and Mehl intentionally closed the loans without interest rate floors, thereby earning significant fees, and damaging Plaintiff. Plaintiff is not entitled to the benefit of the interest rate floor provisions that are not contained within the loan documents. Rather, it is

entitled to collect from the borrowers the interest rate, which, as a result of adjustments, frequently fell below the floor.

However, Plaintiff has failed to plead sufficient facts to support these allegations. Plaintiff fails to assert that the interest rates of these adjustable rate loans dipped below the "floor" stipulated in the commitment letters, or the amount of profit that plaintiff lost as a result of the below-floor rate. Although Plaintiff attempts to defend its allegations in its motion papers, it nevertheless appears that Plaintiff has conceded that it has not alleged sufficient facts against these defendants and it seeks leave to replead to "add factual allegations" against the defendants. (*See* Pl. Shore Opp. 2 & n.2; Pl. Frankel Opp. 3 & n.1; Pl. Mehl Opp. 2 & n.1.)[1] (The request for leave to replead is addressed below, see Section V.) The court finds that plaintiff has failed to adequately allege that, with regard to the interest rate floor allegations, the Meridian Defendants, Shore, Frankel, and Mehl caused clear and definite injury.

In light of the fact that Plaintiff has failed to properly allege injury and proximate cause as to all three of its theories, the RICO claim must be dismissed in its entirety.

## II.    ADDITIONAL ARGUMENTS

Although Plaintiff's failure to adequately allege injury and proximate cause is sufficient to dismiss the RICO claim against all defendants, certain additional arguments put forth by some of the defendants warrant discussion.

---

[1] Strangely, in the opposition to Frankel's motion to dismiss, Plaintiff stated that losses have been caused by the Meridian Defendants' predicate acts and it seeks leave to replead to add factual allegations against the Meridian Defendants. It appears as though Plaintiff meant to request leave to replead as to Frankel.

## A. **PARTICIPATION**

Shore, Frankel, Mehl, NH, Kesler, MAK, MDS, and Admore argue that the complaint fails to allege that they participated in the enterprise. To state a RICO claim under 18 U.S.C. § 1962(c), a plaintiff must allege facts that show that the defendant was engaged in the "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *see also First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 173 (2d Cir. 2004). "For RICO purposes, simply establishing the presence of an enterprise is not enough." *First Capital Asset Mgmt.*, 385 F.3d at 176. Plaintiffs must also allege that defendants "conduct[ed] or participate[d], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c); *see also Reves v. Ernst & Young*, 507 U.S. 170, 177-79 (1993). "One is liable under RICO if he or she has discretionary authority in carrying out the instructions of the [conspiracy's] principals, or played some part in directing the affairs of the RICO enterprise." *Baisch v. Gallina*, 346 F.3d 366, 376 (2d Cir. 2003) (internal quotation marks and citations omitted). Although the Second Circuit has described the "operation or management" test as establishing a "relatively low hurdle" at the pleading stage, "the RICO defendant must have played 'some part in directing the enterprise's affairs.'" *First Capital Asset Mgmt.*, 385 F.3d at 176 (citation omitted).

### 1. **ALLEGATIONS AGAINST THE APPRAISAL DEFENDANTS**

The complaint alleges that the "RICO Defendants directly or indirectly invested in, maintained an interest in, or participated in the enterprise." (Compl. ¶ 116.) The complaint also alleges that the Appraisal Defendants, which includes NH, Kesler, MAK, MDS, and Admore, acted at the direction of First Central. (Compl. ¶ 42.) The complaint further alleges that the Appraisal Defendants prepared appraisals that they knew or should have known were

fraudulent.[2]   (citing Compl. ¶ 53.)   Plaintiff contends that these allegations are sufficient to demonstrate participation in the enterprise and reasons that it need only demonstrate that each defendant acted at the direction of other members of the enterprise because "an enterprise is operated not just by upper management but also by lower-run participants in the enterprise who are under the direction of upper management." (Pl. Opp. to NH Appraisal 9-10 (citing *Fuji Photo*, 640 F. Supp. 2d at 314) (internal quotation marks omitted); Pl. Opp to MDS 28; Pl. Opp. to Admor 7-8; Pl. Opp to MAK and Kesler 9-10.)

Although liability may attach to lower-rung participants, "some part in directing the enterprise's affairs is required." *Reves v. Ernst & Young,* 507 U.S. 170, 179 (1993). "There is a meaningful difference 'between actual control over an enterprise and association with an enterprise in ways that do not involve control; only the former is sufficient . . . because the test is not involvement but control.'" *West 79th Street Corp. v. Congregation Kahl Minchas Chinuch*, 2004 WL 2187069, at *14 (S.D.N.Y. Sept. 29, 2004) (quoting *Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.)*, 924 F. Supp. 449, 466 (S.D.N.Y.1996)).   Therefore, "it is not enough to allege that a defendant provided services that were helpful to an enterprise, without alleging facts that, if proved, would demonstrate some degree of control over the enterprise." *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297 (S.D.N.Y. 2010); *see also West 79th Street Corp. v. Congregation Kahl Minchas Chinuch*, 2004 WL 2187069, at *14 (S.D.N.Y. Sept. 29, 2004) ("Merely rendering services to an alleged enterprise does not establish that a person or entity controls the enterprise for purposes of Section 1962(c).") (citing additional cases); *Dietrich v. Bauer*, 76 F. Supp. 2d 312 (S.D.N.Y. 1999); *Fidelity Fed. Savs. & Loan Ass'n v. Felicetti*, 830 F.

---

[2] Plaintiff also points to paragraph 47 of the complaint.   (*See* Pl. Opp. to NH Appraisal 9.) However, that paragraph alleges that the Meridian Defendants submitted fraudulent documents, and contains no allegations regarding the Appraisal Defendants.   Therefore, this reference is irrelevant.

Supp. 257, 260 (E.D. Pa. 1993) (even though the defendant's appraisals were performed with complete independence, "the submission of misleading and fraudulent appraisals does not rise to the level of operating or managing" the enterprise).

Here, the complaint is insufficient because it fails to contain factual allegations concerning any discretionary authority exercised by the Appraisal Defendants or any other control exerted over the enterprise. *See, e.g., West 79th Street Corp. v. Congregation Kahl Minchas Chinuch*, 2004 WL 2187069, at *14 (S.D.N.Y. Sept. 29, 2004) (complaint failed to contain factual allegations regarding how defendants "enjoyed discretionary authority or otherwise controlled the purported enterprise in any manner that might distinguish them from an outside provider of professional services working at the behest of a client"); *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F.Supp.2d 297 (S.D.N.Y. 2010) (dismissing certain defendants where complaint alleged "only that they provided services that were helpful to the association in fact enterprise—by ordering subscriptions under false pretenses" and "[n]ot a single fact is alleged as to any of these defendants tending to show that they exercised the slightest degree of control over either of the claimed enterprises"); *Oak Street Mortg. v. Fundz R Us, Inc.*, 2007 WL 1970890, at *4 (N.D. Ind. 2007) ("All that Oak Street has alleged of Wyman is that he provided real estate appraisals that were the product of negligence or fraud. Even if these assertions are true, absent allegations of operation or management of the scheme, Wyman cannot be held liable under RICO."). Moreover, even if a defendant knew of the fraud, this is not sufficient to demonstrate that the defendant directed or operated the scheme. *See In re Agape Litig.*, 681 F. Supp. 2d 352, 369 (E.D.N.Y. 2010) (dismissing RICO claim where, "[e]ven if the Court assumes that [the defendant] consciously ignored the fraud or provided important services to aid in its commission, this would still be insufficient to show that [the defendant] directed or operated [the] scheme").

The cases Plaintiff cites in support of its position are inapposite. Plaintiff cites *Fuji Photo Film U.S.A.*, 640 F. Supp. 2d 300, 310 (S.D.N.Y. 2009) to demonstrate that a defendant exercises control if he has discretionary authority when carrying out the instructions of the principals. (Pl. Opp. to Shore 10.) However, in *Fuji Photo*, unlike here, "the Complaint allege[d] that the defendants exercised discretion in carrying out [the principal's] directions." *Id.* at 314. Plaintiff also cites to *JSC Foreign Economic Ass'n Technostroyexport v. Weiss*, 2007 WL 1159637, at *8-9 (S.D.N.Y. Apr. 18, 2007). However, in *JSC*, the complaint alleged that the accounting firm "did more than prepare tax returns or provide outside accounting services," and alleged that the defendant was the "architect" of some of the money laundering activities and that he devised and managed a scheme to carry out real estate transactions. The allegations here are devoid of any such specificity.

In sum, Plaintiff fails to provide any facts that demonstrate control by the Appraisal Defendants. *See Lippe v. Bairnco Corp.*, 218 B.R. 294, 304 (S.D.N.Y. 1998) ("[P]laintiffs fail to allege that the professional defendants had some part in directing the affairs of a RICO enterprise. Plaintiffs only allege that the professional defendants 'knowingly, intentionally or recklessly' assisted in effecting the Transactions, in rendering advice on the Transactions, and/or in preparing disclosures regarding the Transactions or disclosures regarding Keene's asbestos liability."). Therefore, this argument provides an additional basis for granting the motions to dismiss by NH, Kesler, MAK, MDS, and Admore.

## 2.  ALLEGATIONS AGAINST THE ATTORNEY DEFENDANTS

With regard to Shore, Frankel, and Mehl, the complaint alleges that the "RICO Defendants directly or indirectly invested in, maintained an interest in, or participated in the enterprise." (Compl. ¶ 116.) The complaint also alleges that the Attorney Defendants, which

includes Shore, Frankel, and Mehl, acted at the direction of First Central. (Compl. ¶ 44.) The complaint alleges that the "majority" of the loans had "commitment letters issued by First Central which contained adjustable interest rates with interest rate floors." (Compl. ¶ 56.) The complaint further alleges that for three of the loans, the Attorney Defendants closed the loans with documentation containing terms that were materially different from those agreed to by First Central, including the omission of interest rate floors which were contained in commitment letters for the borrowers. (Compl. ¶ 56.) The complaint also alleges that the Attorney Defendants consistently permitted mortgage loans to close with funding by First Central despite the fact that they had knowledge of facts that adversely affected First Central's interests with respect to the loans. (Compl. ¶¶ 56, 58-62.)

As with NH, Kesler, MAK, MDS, and Admore, the complaint fails to allege any discretion exercised by Shore, Frankel, and Mehl, or any other control exerted by these defendants. Plaintiff states that "[c]ommon sense dictates that any inducement by the Meridian Defendants or the appraisers in this case would have been worthless without Shore's unlawful conduct of ensuring that these loans closed at any cost." (Pl. Opp. to Shore 9; see also Pl. Opp. to Frankel 9 (same quote); Pl. Opp. to Mehl 9 (same quote).) However, as stated above, "it is not enough to allege that a defendant provided services that were helpful to an enterprise, without alleging facts that, if proved, would demonstrate some degree of control over the enterprise." *Elsevier Inc. v. W.H.P.R., Inc*., 692 F. Supp. 2d 297 (S.D.N.Y. 2010)

Plaintiff also states in its motion papers that it "has alleged with specificity" that Shore "participated in the fraudulent scheme by ensuring that the loans closed at all costs." (Pl. Opp. to Shore 10.) However, the allegations in the complaint do not support Plaintiff's assertion.

Indeed, that complaint alleges that the Attorney Defendants "permitted" the loans to close, demonstrating a passive role in the enterprise.

Furthermore, as noted above, even if the defendants knew of the fraud, knowledge is not sufficient to demonstrate that the defendant directed or operated the scheme. *See In re Agape Litig.*, 681 F. Supp. 2d 352, 369 E.D.N.Y.,2010 (dismissing RICO claim where, "[e]ven if the Court assumes that [the defendant] consciously ignored the fraud or provided important services to aid in its commission, this would still be insufficient to show that [the defendant] directed or operated [the] scheme"). Therefore, the complaint fails to allege participation by Shore, Frankel, and Mehl, and must be dismissed as to these defendants.

### B.    MDS ARGUMENT REGARDING PERSONAL JURISDICTION AND VENUE

MDS also argues that the court does not have personal jurisdiction over MDS pursuant to New York State law, and that venue is improper in the Eastern District of New York. In its reply, however, MDS acknowledges that personal jurisdiction can be established pursuant to 18 U.S.C. § 1965(b). To establish jurisdiction pursuant to Section 1965, the plaintiff must show that the court has personal jurisdiction as to at least one defendant based on minimum contacts, and that the ends of justice require the exercise of jurisdiction. *PT United Can Co., Ltd. V. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 71 (2d Cir. 1998). The phrase "ends of justice require" has been interpreted to mean that the statute authorizes an assertion of personal jurisdiction if, otherwise, the entire RICO claim could not be tried in one civil action. *See id.* at 71-72.

The parties do not dispute that the court has personal jurisdiction over at least one defendant. Moreover, the only response MDS puts forth to rebut plaintiff's contention the ends of justice require jurisdiction in this district is that plaintiff fails to show that MDS was involved in the RICO enterprise. MDS does not contend that there is a district in which the RICO claims

can be tried against all of the defendants. (MDS Reply 2.) Therefore, personal jurisdiction is proper under Section 1965. *See Elsevier Inc. v. W.H.P.R., Inc*., 692 F. Supp. 2d 297 (S.D.N.Y. 2010) (rejecting motion to dismiss for lack of personal jurisdiction where "it certainly does not appear that any other district would be able to hear the RICO claim against all of the Defendants"). Moreover, under the generous venue prerequisites of section 1965(a), a civil RICO suit can be instituted in any district which has minimum contacts with at least one defendant. *See PT United*, 138 F.3d at 71. Therefore, venue is appropriate pursuant to 18 U.S.C. §1965(a). MDS' motion to dismiss on this basis is therefore denied.

## III.  CONSPIRACY CLAIM

Plaintiff also alleges a conspiracy to violate RICO by all of the defendants. This claim must also be dismissed because Plaintiff has failed to allege a satisfactory, substantive RICO claim. *See, e.g.*, *Freund v. Lerner*, 2010 WL 3156037, at *9 (S.D.N.Y. Aug. 10, 2010); Fuji *Photo Film U.S.A., Inc. v. McNulty*, 640 F. Supp. 2d 300, 312 (S.D.N.Y.2009).

## IV.  STATE LAW CLAIMS

In light of the fact that plaintiff's RICO claims have been dismissed, only Plaintiff's state law claims remain. "Generally, where federal claims are dismissed at an early stage, courts decline supplemental jurisdiction and dismiss pendent state law claims without prejudice." *Pu v. Charles H. Greenthal Mgmt. Corp*., 2010 WL 774335, at *5 (S.D.N.Y. Mar. 9, 2010) (citing *Marcus v. AT & T Corp*., 138 F.3d 46, 57 (2d Cir. 1998)). Plaintiff provides no sound reasons why the state claims should be maintained in this court. They are thus dismissed without prejudice.

## V.  <u>LEAVE TO REPLEAD</u>

Plaintiff seeks leave to replead.  Whether to permit parties to amend their pleadings is a matter entrusted to the court's "sound discretion."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  Federal Rule of Civil Procedure 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires."  Although "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead," *Cortec Induss., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir.1991), leave to amend should be denied when amendment would be futile.  *See, e.g*, *Tocker v. Philip Morris Cos., Inc*., 470 F.3d 481, 491 (2d Cir. 2006). This concept extends to a motion for judgment on the pleadings brought under Rule 12(c).  *See, e.g*., *Shochat v. Weisz*, 757 F. Supp. 189, 196 (E.D.N.Y. 1991).  The claims here have been dismissed without prejudice as a result of the conclusory way in they were alleged or because of a failure to plead a certain element.  In light of the preference toward allowing a plaintiff the opportunity to cure such defects through an amended complaint where, as here, the litigation is in its early stages, Plaintiff is granted leave to file an amended complaint consistent with this Memorandum and Order.[3]  The amended complaint must be filed no later than April 4, 2011. The dismissal of the complaint is held in abeyance pending the filing of an amended complaint. Failure to timely file an amended complaint will result in the entry of the dismissal of this action as to the moving defendants.

---

[3] However, the court notes that defendants raised additional arguments in support of their motions to dismiss that were unnecessary to address in this Order in light of the other reasons for dismissal and the possibility that Plaintiff may choose to submit an amended complaint with additional factual allegations.  Plaintiff is well advised that it should carefully consider defendants' additional arguments to determine if they have any merit when preparing any amended complaint.

## CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss are granted, and the claims against them are dismissed without prejudice. Any amended complaint must be filed no later than April 4, 2011. The dismissal of the complaint is held in abeyance pending the filing of an amended complaint. If plaintiff does not file an amended complaint within this time, the claims dismissed herein without prejudice will be deemed to be dismissed with prejudice and a dismissal order will be entered.

SO ORDERED.

Dated: Brooklyn, New York
        March 4, 2011

_____
            /s/
        DORA L. IRIZARRY
    United States District Judge