UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------- x
FIRST CENTRAL SAVINGS BANK,

                Plaintiff,

           -against-

MERIDIAN RESIDENTIAL CAPITAL d/b/a/
TRUMP FINANCIAL, DAVID BRECHER,
MERIDIAN MORTGAGE SERVICES, INC.,
DBS SERVICING SOLUTIONS, INC., NH
APPRAISAL ASSOCIATES, INC., DAVID S.
FRANKEL, P.C., MDS APPRAISAL GROUP,
LAW OFFICES OF SAM SHORE, JEFFREY
E. MEHL, ESQ., TRUE VALUATIONS
APPRAISERS, ADMOR APPRAISALS,
ATRIUM APPRAISAL SERVICES, INC.,
THE ADDISON GROUP, OLD REPUBLIC
NATIONAL TITLE INSURANCE CO.,
ANDREW KESLER, and MAK APPRAISALS,

                Defendants.
---------------------------------------------------------- X

**MEMORANDUM AND ORDER**
09-CV-3444 (DLI) (LB)

**DORA L. IRIZARRY, United States District Judge:**

On August 7, 2009, plaintiff First Central Savings Bank ("First Central") filed this civil RICO action against defendants Meridian Residential Capital, LLC s/h/a "Meridian Residential Capital d/b/a Trump Financial" ("Meridian"), David Brecher, Meridian Services, Inc. s/h/a "Meridian Mortgage Services, Inc." ("MSI"), DBS Servicing Solutions, Inc. ("DBS") (collectively, Meridian, Brecher, MSI and DBS are the "Meridian Defendants"), and various other defendants. The Meridian Defendants are seeking a court order imposing sanctions on Plaintiff pursuant to Rule 11 of the Federal Rules of Civil Procedure. For the reasons set forth below, the motion is granted in part and denied in part.

1

## BACKGROUND

Plaintiff filed a complaint on August 7, 2009, alleging that it entered into a Loan Origination and Marketing Agreement with the Meridian Defendants that sets forth procedures for the parties to follow when originating and closing certain loans. Plaintiff further alleged that, between 2003 and 2008, the Meridian Defendants originated over 225 mortgage loans that are now on First Central's books, and that some are in foreclosure.

The complaint alleged that the Meridian Defendants submitted fraudulent information to First Central for the purpose of inducing Plaintiff to fund the loans. First, Plaintiff alleged that the Meridian Defendants and others submitted overstated appraisals which induced Plaintiff to issue or purchase loans that it otherwise would not have issued or purchased. (Compl. ¶¶ 52-55.) Second, Plaintiff alleged that the Meridian Defendants submitted loan applications that misrepresented borrowers' incomes, and that the Meridian Defendants and others permitted mortgages to close with funding by Plaintiff despite the fact that the defendants had knowledge of facts that adversely affected Plaintiff's interests with respect to the loans. (Compl. ¶¶ 47-51, 58-62.) Third, Plaintiff alleged that the Meridian Defendants and others closed the mortgage loans without including the interest rate floors that Plaintiff had demanded. (Compl. ¶¶ 56-57.)

Plaintiff asserted various claims, including a RICO claim pursuant to 18 U.S.C. § 1962(c), a RICO conspiracy claim pursuant to 18 U.S.C. § 1962(d), and various state law claims. Several defendants filed motions to dismiss the complaint. The court granted the motions to dismiss, but the dismissal has been held in abeyance pending the filing of an amended complaint.

The Meridian Defendants also moved for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure, arguing that plaintiff made factual assertions in its pleadings without

evidentiary support. Because the motion was filed prior to the Order granting the motion to dismiss, Defendants sought to have the complaint dismissed and to have the Plaintiff charged with the attorneys' fees expended in making this motion.

**APPLICABLE LAW**

Under Rule 11, attorneys filing complaints are representing that, after reasonable inquiry, they believe that "the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). A pleading violates Rule 11(b)(3) where "after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact." *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002) (citation omitted); *see also In re Pennie & Edmonds LLP* 323 F.3d 86, 90 (2d Cir. 2003). An erroneous statement of fact within a pleading "can give rise to the imposition of sanctions only when the 'particular allegation is utterly lacking in support.'" *Kiobel v. Millson*, 592 F.3d 78, 81 (2d Cir. 2010) (quoting *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 388 (2d Cir. 2003). "Rule 11 neither penalizes overstatement nor authorizes an overly literal reading of each factual statement." *Id.* at 83 (citation omitted). Moreover, "a plaintiff is not required to know at the time of pleading all facts necessary to establish the claim," and thus may make allegations based on information and belief. *Commercial Cleaning Servs., LLC v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 386 (2d Cir. 2001).

"Additionally, 'when divining the point at which an argument turns from merely losing to losing and sanctionable, . . . courts [must] resolve all doubts in favor of the signer' of the pleading." *Young v. Suffolk County*, 705 F. Supp. 2d 183, 214 (E.D.N.Y. Apr. 9, 2010) (quoting *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993)). Nevertheless, "the creativity

3

of an attorney may not transcend the facts of a given case." *Levine v. Fed. Deposit Ins. Corp.*, 2 F.3d 476, 479 (2d Cir.1993) (citation omitted).

Rule 11 also requires that the party seeking the imposition of sanctions permit the alleged violator twenty-one days to correct its conduct. *Lawrence v. Richman Group of CT LLC*, 620 F.3d 153, 156 (2d Cir. 2010). The twenty-one day period between notice and filing is referred to as a "safe harbor" because the opposing party may avoid sanctions by withdrawing or correcting the offending material during this period. As set forth below, Plaintiff did take some steps toward addressing the Meridian Defendants' complaints within the safe harbor period.

## DISCUSSION

**1. FACTUAL ALLEGATIONS CHALLENGED BY THE MERIDIAN DEFENDANTS**

Defendant identifies four groups of allegations that it believes were stated without foundation: (1) that the Meridian Defendants concealed borrower defaults by making payments on behalf of defaulted borrowers; (2) that the Meridian Defendants overstated the income of borrowers; (3) that the Meridian Defendants permitted loans to close despite knowledge of judgments and liens; and (4) the Meridian Defendants closed loans without interest rate floors. The Meridian Defendants have provided documents that they believe show that Plaintiff's assertions were without merit.

### a. CONCEALMENT OF BORROWER DEFAULTS

First, the Meridian Defendants argue that Plaintiff improperly alleged that the defendants tried to conceal borrower defaults. In the complaint, Plaintiff alleged that the defendants fraudulently misstated facts in the loan applications of certain borrowers in order to induce Plaintiff to fund the loans. Plaintiff further alleged that, when the borrowers defaulted, in order

to conceal the alleged fraud from Plaintiff, the Meridian Defendants made the required loan payments to Plaintiff on behalf of the borrowers.

The Meridian Defendants argue that several emails between Defendant Brecher and First Central's Vice President Pilar Michaelides demonstrate that First Central was informed both that the loans were "non-performing" and that the Meridian Defendants were making the mortgage payments. (Def. Mem. 5-9.) For example, the Meridian Defendants contest an allegation regarding concealment of the default of Rifky Rubenstein's loan, and they refer to a November 20, 2006 email from the Meridian Defendants to Michaelides, which states that the Meridian Defendants agreed to "make you whole on [the Rubenstein] loan." (Brecher Decl. Ex. 6.) Plaintiff responds that the concealment allegations do not refer to the Rubenstein loan addressed in the email, and the Meridian Defendants do not contest that fact. Therefore, sanctions are clearly not warranted with regard to this allegation.

In addition, the Meridian Defendants point to several other emails, including an email dated October 11, 2006, from defendant DBS Servicing to Michaelides. This email addresses the loan of Missiel Lugo, and the email states that the "Lugo first mortgage should be current in your books since we send you the monthly payments regardless. In our books she is delinquent." (Brecher Decl. Ex. 4.) Similarly, on October 29, 2009, several emails were exchanged, wherein Michaelides stated that Brecher had recently advised her that "Meridian would bring First Central Savings Bank current" on two loans that were listed as "non-performing loans." (Brecher Decl. Ex. 5.) Michaelides further stated that Brecher advised her that "Meridian would service these loans and make the payments to First Central Savings Bank until the files were resolved—meaning satisfied." (*Id.*) Michaelides asked to be informed of whether "Meridian is still prepared to bring these loans current, service the loans and if possible when can these loans

5

be brought current?" (*Id.*) Brecher responded that "[a]s soon as the servicing transfer is done they will be brought current." (*Id.*)

Plaintiff responds that the emails never made clear that the loans had never performed, and instead were calculated to "downplay the issue" and confirm that "if a borrower was not making its payment in [a] timely fashion to the Meridian Defendants, then they would advance the payment on behalf of the borrower to First Central and reimburse themselves when the borrower made its late payment." (Pl. Opp. 10.) Although Plaintiff's argument is suspicious, it is not clear why the Meridian Defendants were providing payments to the Plaintiff on loans that had defaulted. Therefore, it is not unreasonable for Plaintiff to assume that the Meridian Defendants expected to be reimbursed for the payments to Plaintiff. Accordingly, the Meridian Defendants have failed to show, at this early stage in the litigation, that the allegations are utterly lacking in support. Moreover, in light of the fact that, "'when divining the point at which an argument turns from merely losing to losing and sanctionable, . . . courts [must] resolve all doubts in favor of the signer' of the pleading," *Young v. Suffolk County*, 705 F. Supp. 2d 183, 214 (E.D.N.Y. Apr. 9, 2010), Plaintiff's allegations are not sanctionable.

The Meridian Defendants also point to additional emails from June to September 2007 that contain similar conversations. Plaintiff responds that the emails from 2007 are irrelevant because it now admits that it learned of the fraud at the end of 2007. It further states that it informed the Meridian Defendants of this admission in a letter dated January 7, 2010, within the safe-harbor period. The Meridian Defendants argue that the letter is insufficient, and Plaintiff should have attempted to amend the complaint or withdraw the allegations that misleadingly stated that it believed that the unlawful conduct was concealed into 2008. Although the Meridian Defendants are correct that Plaintiff failed to take the proper steps to address the misstatement in

the complaint, this conduct nevertheless does not warrant sanctions, particularly because the complaint has been dismissed, and Plaintiff now has the opportunity to amend the complaint. Plaintiff is admonished that, in the future, it must promptly take any necessary steps to correct or amend misleading documents, and not merely write a letter to opposing counsel.

  b. **OVERSTATED APPRAISALS**

Second, Defendants argue that First Central did not have support for its allegation that the income of certain individuals who received loans, specifically NFL football player Victor Marquis Cooper, was overstated. The complaint alleged that the Meridian Defendants fraudulently misstated "Mr. Cooper's [bi-weekly] income as $77,744 on the application, an intentional overstatement of $32,327 for the purpose of inducing First Central to purchase the loans from the Meridian Defendants." (Compl. ¶ 47.) Defendants argue that Copper's pay consisted of a bi-weekly payment of $35,882, with a signing bonus and a performance bonus, and that he earned $721,009 in 2004. Plaintiff responds that Defendants miscalculated Cooper's income by utilizing twenty-six pay periods, rather than the twelve pay periods as provided in Cooper's contract because Cooper was paid only over the course of the six-month football season. First Central thus concludes that his base salary is $545,000, which does not reflect the amount stated in the loan application.

The Meridian Defendants respond that Plaintiff received documentation regarding Cooper's pay with the loan application, and thus could have judged for itself whether Cooper qualified for the loan. Plaintiff does not dispute that it received Cooper's pay documentation with the loan application, and this may very well prove to be an adequate defense to the claims alleged. However, the complaint merely states that the income was overstated in order to induce

7

Plaintiff to purchase the loans, and the Meridian Defendants have not definitely shown that this allegation is incorrect. Therefore, sanctions are not warranted.

### c.  CLOSED LOANS WITHOUT INTEREST RATE FLOORS

Third, the Meridian Defendants argue that there is evidence contradicting the allegation that the Meridian Defendants allowed certain loans to close without including interest rate minimums specified in First Central's commitment letter. (Def. Mem. 11.) The complaint alleged that First Central issued a commitment letter to Erwin Goldstein which contained an interest rate of 9.25% and, although the Meridian Defendants "were aware of this term when the loan documents were prepared and at the time of closing, they permitted the loan to close without the inclusion of any interest rate floor in the final loan documents, including the note executed by Goldstein." (Compl. ¶ 56.) The Meridian Defendants provide documents demonstrating that First Central received the note prior to funding the loan, and that the note contained no minimum interest rate.

First Central contends that the documents show merely that the Meridian Defendants sent one of the unsigned loan agreements to First Central, and that the document does not affect the entire loan portfolio. The fact that the one agreement does not reflect the entire loan portfolio is irrelevant because First Central included this example in its complaint, and thus relied on this example to support its claims. The fact that it is unsigned, however, raises questions about whether it would have provided Plaintiff a reliable basis for concluding that the interest rate floor was absent.

The Meridian Defendants argues in response that the "Meridian Defendants could have submitted more examples, but First Central is accountable for all of the 'factual contentions' in its pleadings that do not have 'evidentiary support.'" (Def. Reply 8 (citing Fed. R. Civ. P.

11(b)(3)).) Although Plaintiff is responsible for its pleadings, sanctions are not warranted unless the Meridian Defendants demonstrate that the "particular allegation is utterly lacking in support." *Kiobel v. Millson*, 592 F.3d 78, 81 (2d Cir. 2010) (internal quotation marks and citation omitted). The Meridian Defendants' conclusory allegation that it "could have submitted more examples" fails to meet this standard. Therefore, while it is somewhat suspect that Plaintiff did not seek clarification from the Meridian Defendants prior to the time the loan closed, in light of the fact that ambiguities are to be construed in favor of the signer of the pleading, sanctions are not warranted on this ground.

### d. LOANS CLOSED DESPITE EXISTENCE OF ENCUMBRANCES

Fourth, Defendants argue that First Central did not have support for its allegation that the Meridian Defendants deceptively allowed loans to close despite the existence of encumbrances affecting the collateral. (Def. Mem. 17-18.) The complaint alleged that the Meridian Defendants withheld information concerning a judgment against borrower David Myers "for the purpose of inducing First Central to fund the loan." (Compl. ¶ 58.) The complaint similarly alleged that the Meridian Defendants "permitted the mortgage loan issued to [Doreen] Rush to close despite the fact that they knew or reasonably should have known that there existed prior Internal Revenue Service tax liens," and that the Meridian Defendants "withheld such information from First Central." (Compl. ¶ 60.)

In support of this motion, the Meridian Defendants provided documents demonstrating that First Central knew of both the judgment against Myers and the tax liens against Doreen Rush. (*See* Brecher Decl. Ex.s 12-14.) Plaintiff responds that the Meridian Defendants are misconstruing the allegations in the complaint. Plaintiff argues that the allegation is that the Meridian Defendants "**closed** these loans with funding by First Central despite the existence" of

9

the prior judgment and tax lien. (Pl. Opp. 12.) Plaintiff is thus arguing that the fraud consisted of closing the loans. However, this is contrary to the allegations as set forth in the complaint, which clearly alleged that the Meridian Defendants "withheld" the information in order to induce First Central to fund the loan. (Compl. ¶¶ 59, 60.) Therefore, it appears that Plaintiff is attempting to modify its allegations without admitting that the allegations as originally stated in the complaint were incorrect. Such conduct runs afoul of Rule 11.

Nevertheless, monetary sanctions are not warranted. *See Perez v. Posse Comitatus*, 373 F.3d 321, 325-26 (2d Cir. 2004) ("Even if the district court concludes that the assertion of a given claim violates Rule 11 . . . the decision whether or not to impose sanctions is a matter for the court's discretion."); *Jung v. Neschis*, 2003 WL 1807202, at *4 (S.D.N.Y. Apr. 7, 2003) (when determining whether sanctions are appropriate, a district court is obligated to exercise caution and restraint). *Milani v. Int'l Bus. Mach. Corp., Inc.*, 2004 WL 3068451, at *2 (S.D.N.Y. Dec. 30, 2004) ("A finding that someone has engaged in sanctionable conduct . . . itself carries a sting.").

However, Plaintiff is not permitted to include these allegations if it chooses to file an amended complaint. *See Abdelhamid v. Altria Group, Inc.*, 515 F. Supp. 2d 384, 400 (S.D.N.Y. 2007) (denying monetary sanctions, but holding that "[a] more appropriate sanction" is the dismissal of the amended complaint and further noting that "[a]lthough the Court has already decided to dismiss the Amended Complaint for failure to state a claim, this sanction under Rule 11 serves as an alternative ground for dismissal"). These allegations are dismissed with prejudice.

Additionally, the court fully expects Plaintiff to consider carefully the arguments discussed in this Order and to provide a more thoughtful amended complaint if it chooses to file

one. Plaintiff is well advised to consider carefully whether it has valid claims when deciding whether to file an amended complaint, and exercise care in crafting its pleadings in order to avoid any of the ambiguities that gave rise to this motion.

## 2. SANCTIONS ARE NOT WARRANTED AGAINST THE MERIDIAN DEFENDANTS

Finally, Plaintiff's requests to have the Brecher Declaration stricken and to have sanctions imposed on the Meridian Defendants are denied. Plaintiff has provided no basis to strike the Brecher Declaration, and, instead, merely makes the conclusory statement that the statements in the declaration are not based on personal knowledge. Similarly, Plaintiff fails to provide any basis for imposing sanctions on the Meridian Defendants. Sanctions are not warranted, particularly in light of the fact that the Meridian Defendants' motion is being granted in part.

## CONCLUSION

For the reasons set forth above, the Meridian Defendants' motion for sanctions is granted in part and denied in part. If Plaintiff chooses to file an amended complaint, it is not permitted to include allegations that the Meridian Defendants deceptively allowed the Myers and Rush loans to close despite the existence of encumbrances affecting the collateral.

SO ORDERED.

Dated: Brooklyn, New York
   March 30, 2011

                    /s/
                  DORA L. IRIZARRY
                United States District Judge